UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH LEE,

                              Petitioner,                    **DECISION AND ORDER**

              -vs-                                           No. 02-CV-6456

THOMAS RICKS, Superintendent, Upstate
Correctional Facility,
                              Respondent.


_____


        Joseph Lee ("Lee") filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 challenging his conviction in Monroe County Court on charges of robbery,

attempted robbery and assault. The parties have consented to disposition of this matter by the

undersigned pursuant to 28 U.S.C. § 636(b).

                    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        The conviction at issue stems from two separate robberies: the robbery of a delicatessen

and the attempted robbery of a liquor store both in the City of Rochester on the evening of

February 1, 1999, by Lee and his co-defendant, Fred Walker ("Walker").  Lee and Walker were

arrested that same night. A Monroe County Grand Jury returned a indictment charging the two

men with various counts of robbery, attempted robbery, and assault. The defendants' severance

motions were denied, and they were tried jointly in Monroe County Court (Sirkin, J.) before a

jury.

        At trial, the prosecution presented evidence that at about 7:45 p.m. on February 1, 1999,

owner Tanios Sarkis ("Sarkis") was working alone his store, Wadi's Deli, located at 391 Chili Avenue when a black male entered and asked if he had any doughnuts. Seconds later, another black male, carrying a stick, walked in and demanded money. Sarkis informed them that they could take whatever cash was in the register. In response, the second man hit Sarkis with the stick. When Sarkis reached for his shotgun, both men forced him to the ground, kicked him, and beat him with the stick, causing Sarkis to suffer a broken arm. The perpetrators then left the delicatessen with the shotgun. *See* T.219-34.[1]

Officers Swain and Vail of the Rochester Police Department responded to the 911 call and arrived on the scene about 15 minutes later. They interviewed the seventy-year-old Sarkis, who was in considerable pain, and sent him to the hospital. As they were looking for suspects, they received a call about an incident at Henner's Liquor Store at 556 Chili Avenue and went to investigate. T.435-37.

At about 8:20 p.m. that evening, Patricia Martin ("Martin") and Anna Kendrick ("Kendrick") were working at Henner's Liquor Store when two black men entered the store. T.266-69, 280, 300-04, 323. One of the men wore a red scarf partially concealing his face and head.  The other man began talking to customer Frances Brown ("Brown") who recognized him as a family friend known to her as "Darnell." At trial, Brown identified Darnell as petitioner Lee. T.268-70, 332. The man in the headscarf remained quiet during Brown's conversations with Lee. T.332-33. Both Kendrick and Martin believed that the men were together because they were conversing with each other as they walked in. T.268 -69, 314. Brown testified that Lee walked in first and that the man in the headscarf walked in right after him, but she did not testify that they

---

[1] Citations to "T.__" refer to the transcript of Lee's trial.

were speaking to each other. T.345.

Several minutes later, the man in the red headscarf pulled out a shotgun and pointed it at Martin's face. Believing it was a toy, Martin told him, "Don't even play with me like that[,]" and walked away from him. T.270. Kendrick also thought that it was a joke until the gunman told everyone not to move and waved the gun in the air. T.305, 315-17. According to Kendrick, Lee remained calm and continued to talk to Brown while the man in the headscarf pointed the gun at the other customers. When Brown questioned Lee about why he was ignoring the gunman, he replied, "'Well[,] this guy is not going to shoot me.'" T.335-36, 346-47. Brown described the demeanor of Lee as nonchalant and somewhat flirtatious throughout this episode.

Martin ducked into the back room where she called the police. The gunman did not attempt to prevent her from the leaving the front part of the store. T.290-91.When Martin returned to the front of the store, she discovered that the gunman had departed and that Lee was still talking to Brown and trying to ask her out on a date. T.272, 283, 337, 346. Kendrick and Brown both testified that prior to leaving, the gunman had announced, "If I really wanted to rob this place I had a perfect opportunity." T.327, 337. Martin and Brown testified that they accused Lee of knowing the gunman, but he kept insisting that he was not with the gunman and did not even know him. T.273, 284, 338.

When Officer Swain and his partner arrived at Henner's Liquor Store, they encountered Lee, who informed them, "I'm not the one, the guy went out the store [*sic*]." T.340. The police took off in pursuit and headed north down Gardiner Avenue. As they approached West Avenue, they were waved down by a man who identified himself as Alvin Davis ("Davis") and who purported to have information concerning the robbery at Wadi's Deli. After a brief conversation,

they took Davis with them in the patrol car and headed back toward Henner's Liquor Store. Upon seeing Lee standing on the sidewalk, Davis pointed at him, indicating that Lee had been involved in the robbery of Henner's Liquor Store. The officers then placed Lee in the patrol car and brought him over to the hospital to perform a show-up.

In the meantime, at 8:27 p.m., Officer Jeroy of the Rochester Police Department received a police broadcast which led him to turn onto Fillmore Avenue.  There he observed a black man, carrying a long gun and clad in red clothing, walking through the backyards. T.376-77. Officer Jeroy stopped his car, got out, and ordered the man to put up his hands and drop the gun. T.379. Officer Jeroy handcuffed the man and brought him over to the hospital (where Officer Swain was waiting with Lee) to do a show-up identification. Officer DiVincenzo facilitated separate show-ups of Lee and Walker at the hospital with Sarkis. The procedures followed during both show-ups were the same: First, the officers removed the defendant from the patrol car. Then, they faced the defendant toward Sarkis and had the defendant turn to his right, turn to his rear, turn to his right again, and then turn fully around. T.466-67. The show-ups lasted for about two minutes each, and the area outside the emergency was brightly lit. T.439-45.  Sarkis did not receive any pain medication until after conducting the show-up procedures. T.469. Sarkis identified the first handcuffed man (*i.e.*, Walker) as the person who had carried the stick and the second handcuffed man (*i.e.*, Lee) as the person who had asked for a doughnut. T.236-37, 248-49, 261-63. He identified both men as the ones who had beaten him.  After the gun was retrieved following Walker's apprehension, Sarkis identified it as his stolen shotgun. T.237-38, 421.

Lee and Walker then were brought to Henner's Liquor Store to do a show-up identification. Martin identified Walker as the person who held the gun in her face and Lee as the

man who was talking to Brown during the incident. T.275-76. Kendrick also identified Lee and Walker during the show-up. T.312-13.

Lee and Walker were tried jointly before a jury.  At trial, the victims of the attempted robbery of the liquor store were able to identify Lee and Walker as the perpetrator, but Sarkis, the victim of the deli robbery, was unable to identify the two perpetrators. T.258, 372-81. After the prosecution rested, Lee's defense counsel moved to dismiss the indictments, but this motion was denied. T.492. Lee did not testify. Walker, however, took the stand and denied going into Wadi's Deli, stealing the shotgun, or injuring Sarkis. T.514-19. Walker admitted that he knew Lee, who lived next door to him. Walker related that he had been attacked by two black males earlier in the evening. He explained that he found an abandoned shotgun next to a dumpster and went into Henner's Liquor Store alone with the gun to find his assailants. T.497-99, 501-12, 539. Walker testified that he did not have any intent to rob the liquor store that night.

The jury returned a verdict convicting Lee and Walker of all counts in the indictment. Lee was sentenced as a second violent felony offender pursuant to New York Penal Law § 70.04. On the first seven counts relating to the robbery and assault that occurred at Wadi's Deli, Lee was sentenced to concurrent determinate terms of imprisonment, the longest of which was 20 years. Lee received a five-year term of imprisonment on both the eighth and ninth counts, which stemmed from the attempted robbery of Henner's Liquor Store. The sentences on counts eight and nine were set to run concurrently with each other but consecutively to the sentences imposed for counts one through seven. *See* December 17, 1999 Sentencing Transcript at 4-5.

On direct appeal, Lee argued that his conviction should be overturned because (1) the court abused its discretion in declining to give an expanded identification charge; (2) the

attempted robbery conviction was based on legally insufficient evidence; (3) the court

erroneously admitted evidence from the show-up conducted at the hospital with Sarkis; (4) the

court erroneously denied defendant's request to call the complainant, Sarkis, as a witness at the

hearing to suppress the identification evidence; (5) the court improperly denied defendant's

severance motion; and (6) the sentence was harsh and excessive. Lee submitted a *pro se*

supplemental brief arguing several additional points; the prosecution urged that the brief be

rejected as untimely. The Appellate Division, Fourth Department, of New York State Supreme

Court unanimously affirmed his conviction on June 8, 2001. *People v. Lee*, 284 A.D.2d 943

(App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to appeal on August

17, 2001. *People v. Lee*, 96 N.Y.2d 920 (N.Y. 2001).

On or about March 6, 2002, Lee collaterally attacked his conviction by way of an

application for a writ of error *coram nobis*. He alleged that his appellate counsel was ineffective

for (1) failing to "fully articulate the grievousness" of the trial court's denial of severance; (2)

failing to argue that six counts of the indictment were multiplicitous; (3) failing to argue that the

evidence was insufficient to support the conviction of robbery and assault with regard to the deli

incident; (4) failing to argue that trial counsel was ineffective for failing to request a

circumstantial evidence charge; and (5) failing to argue that trial counsel was ineffective for

failing to request that any lesser included offenses be submitted to the jury. The Appellate

Division, Fourth Department, denied this application in a summary order entered June 7, 2002.

*People v. Lee*, Nos. 750/01, 00-00093, slip op. 05088 (App. Div. 4th Dept. June 7, 2002).

On May 21, 2002, while his *coram nobis* application was pending, Lee filed a motion to

vacate the judgment and vacate the sentence pursuant to New York Criminal Procedure Law §§

440.10 and 440.20. The trial court denied the motions on June 4, 2002, without a hearing, finding that the grounds raised by defendant could have been raised on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c).

This habeas petition followed in which Lee raises the following grounds for relief: (1) the trial court improperly denied severance; (2) the evidence was insufficient to support his conviction of second degree robbery and first degree assault with respect to robbery of Wadi's Deli; (3) appellate counsel failed to properly argue the denial-of-severance issue; (4) appellate counsel failed to argue the multiplicity of the indictment; (5) appellate counsel failed to argue that the evidence was insufficient to support his conviction of second degree robbery and first degree assault with respect to the Wadi's Deli incident; (6) appellate counsel failed to argue that trial counsel was ineffective for failing to request a circumstantial evidence charge; and (7) appellate counsel failed to argue that trial counsel was ineffective for failing to request that the court charge lesser included offenses. For the reasons set forth below, Lee's petition is denied.

## DISCUSSION

### Exhaustion

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)(1); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained.  *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)).  A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim.

*Grey*, 933 F.2d at 119-20.

A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen'l of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*); *accord*, *e.g.*, *Strogov v. Attorney Gen'l*, 191 F.3d 188, 191 (2d Cir. 1999).

Respondent, represented by the Monroe County District Attorney's Office, asserts that "*some or all* of Petitioner's claims have not been fully exhausted before New York state courts, *and/or* are procedurally barred for failure to properly asserted them before such courts." Respondent's Answer at 6 (Docket #5) (emphasis supplied). Respondent does not provide any clue as to which *specific* claims are unexhausted "and/or" procedurally defaulted, however. Later in its memorandum of law, respondent provides a hint of sorts, stating that "at least three" of the grounds for attorney ineffectiveness asserted by Lee are unexhausted, "to the extent that the claims are asserted separately on their own merit [*sic*]." Respondent's Memorandum of Law at 9 (Docket #5). Despite that purported explanation, it is still unclear to this Court which claims these might be.

In an attempt to unravel respondent's non-exhaustion argument, I have reviewed Lee's habeas petition and found that he has only raised *two* claims independently of his ineffective assistance of appellate counsel arguments, not three as respondent asserts. They are (1) improper denial of severance, and (2) insufficiency of the evidence as to the robbery of Wadi's Deli. *See*

Petition at 5 (Docket #1). Respondent states that Lee's leave application to the New York Court of Appeals raised only one of these issues–the denial of the severance motion. Respondent's Memorandum at 10 (Docket #5). A review of the leave application, however, reveals that counsel explicitly sought leave to appeal on four issues: the trial court's failure to give an expanded identification charge, the sufficiency of the trial evidence regarding the attempted robbery of the liquor store, the denial of the motion to exclude of the show-up identifications, and the denial of defendant's motion to call one of the victim's at the suppression hearing on the identification evidence. Notably, neither the denial of severance nor the insufficiency of the evidence argument concerning the robbery of Wadi's Deli was raised.[2]

Upon further review of the papers submitted in state court on direct appeal, I conclude that there is a valid exhaustion question with respect to the sufficiency-of-the-evidence claim and the denial-of-severance claim asserted independently of Lee's ineffective assistance of counsel claims. First, because the insufficiency of the evidence claim regarding the robbery evidence was not raised in the initial appellate brief, it clearly is unexhausted.

Second, although the severance argument was raised before the Appellate Division, it was not mentioned at all in the leave letter, and therefore it is unexhausted. It appears that Lee's counsel attempted to cover his bases in Lee's leave application by stating in closing, "It is respectfully requested that the court consider all the issues raised *in this letter* . . . ." Leave Letter

---

[2] *See* July 18, 2001 Leave Letter, Respondent's Appendix K at 156 (Docket #5) ("The appellant seeks leave to appeal on the issues of the trial court's failure to give an expanded identification charge, the sufficiency of the trial evidence, the denial of the suppression of the showup and the denial of the application to call the complainant as a witness at the *Wade* hearing.").

at 2 (emphasis supplied), Respondent's Appendix K at 157.[3] Although the severance argument

was raised before the Appellate Division, it was not mentioned at all in the leave letter, and

therefore it is unexhausted. *See Grey v. Hoke*, 933 F.2d at 120; *Jordan v. LeFevre*, 206 F.3d 196,

198 (2d Cir. 2000) (petitioner argued one of his claims in the application for leave to appeal, and

"asked that he be given permission to appeal 'for all these reasons and the reasons set forth in his

Appellate Division briefs'"; the Second Circuit held that "arguing a single claim at length and

making only passing reference to possible other claims to be found in the attached briefs does not

fairly apprise the state courts of those remaining claims."). In light of the "fair presentment

requirement" jurisprudence in this Circuit, I am precluded from finding that Lee fairly apprised

the New York Court of Appeals of his independent claim that the trial court erred in denying

severance.

I conclude, then, that Lee's independent claims (that the trial court improperly denied

severance and that there was insufficient evidence to support the robbery conviction) are

unexhausted. Although respondent evidently had no idea which of Lee's claims were

unexhausted, it stated that it "does not waive Petitioner's exhaustion requirement." Respondent's

Answer at 6 (Docket #5). Were this Court unconstrained by the strictures of AEDPA,[4] it would

not hesitate to find that respondent has waived the defense of non-exhaustion by its litigation

conduct–namely, its mistaken assertion of the affirmative defense on the severance claim and its

apparent inability to identify which claims are unexhausted. *See Banks v. Dretke*, __ U.S. __, 124

---

[3] The Appendix was submitted by respondent in connection with its answer (Docket #5) to the instant petition.

[4] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

S. Ct. 1256, 1280 (2004) ("[W]hile AEDPA forbids a finding that exhaustion has been waived unless the State expressly waives the requirement, 28 U.S.C. § 2254(b)(3), under pre-AEDPA law, exhaustion and procedural default defenses could be waived based on the State's litigation conduct.") (citations omitted). However, AEDPA does not allow me to find that respondent tacitly has waived the exhaustion requirement under these circumstances.

Although these claims are unexhausted, it would be futile for Lee to attempt to return to state court to exhaust them as he now faces "an absence of available State corrective process." 28 U.S.C. § 2254(b)(1). First of all, he has already used the one appeal to the New York Court of Appeals to which he is entitled. *See* N.Y. Court Rule § 500.10(a). Although Lee could bring a motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10, raising these issues on such a motion would be futile: the state court would deny the severance and insufficiency claims pursuant to § 440.10(2)(c) since Lee could have raised them on direct appeal, but failed to do so.[5] In a case such as this, where the petitioner had an opportunity to raise a claim but did not, and is now without a state forum for the claim, the claim is "deemed exhausted" but procedurally barred from federal habeas review. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Grey v. Hoke*, 933 F.2d at 121.

In the case of procedural default, the "federal courts may address the merits of a claim . . . only upon a showing of cause for the default and prejudice to the petitioner," *Bossett*, 41 F.3d at 829, or if the "failure to consider the federal claim will result in a fundamental miscarriage of

---

[5] ". . . [T]he court must deny a motion to vacate a judgment when: . . . (c) [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]" N.Y. Crim. Proc. Law § 440.10(2)(c).

justice," *Harris v. Reed*, 489 U.S. at 262. "Cause" for a procedural default may exist where a

petitioner can show that "the factual or legal basis for a claim was not reasonably available to

counsel, . . . some interference by officials made compliance impracticable, . . . [or] the

procedural default is the result of ineffective assistance of counsel." *Murray v. Carrier*, 477 U.S.

478, 488 (1986) (internal quotation marks and citations omitted). The "fundamental miscarriage

of justice" exception to procedural bar has been interpreted by the Supreme Court to mean

"actual innocence" and is found only in the most extraordinary case. *See Murray*, 477 U.S. at

496.

      Presumably, Lee would argue that his appellate counsel's ineffectiveness in failing to

include the claims on direct appeal constitutes sufficient "cause" to excuse the procedural

default. Attorney ineffectiveness can serve as "cause" but only when the assistance was so

ineffective that it violates the defendant's Sixth Amendment right to counsel. *Edwards v.

Carpenter*, 529 U.S. 446, 451 (2000). One of Lee's habeas claims is that appellate counsel failed

to properly argue, in the brief on appeal, the denial of severance issue. As discussed *infra* in this

opinion regarding petitioner's preserved habeas claims, the severance argument was not

particularly strong; it did not succeed before the state intermediate appellate court, nor would it

have warranted the grant of habeas relief. As to the insufficiency of evidence claim, Lee

explicitly asserts entitlement to habeas relief on the basis that appellate counsel failed to include

this claim on direct appeal. Also as discussed later in this decision, the insufficiency claim likely

would not have succeeded on appeal.

      Therefore, I am unable to find that appellate counsel's failure to broach the severance

issue in the leave letter and failure to raise the insufficiency claim in the first instance amounted

to constitutionally deficient lawyering sufficient to serve as "cause" for the procedural default herein.  In addition, as discussed below, because Lee has not shown any likelihood of prevailing on either of these claims, he has not demonstrated actual prejudice from the procedural default.

Further, Lee has not shown that his procedural default should be excused because there has been a fundamental miscarriage of justice–that is, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). To establish actual innocence, Lee "must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.) (internal quotation marks and citations omitted), *cert. denied*, 537 U.S. 955 (2002). As discussed below, sufficient evidence supported the verdict, and Lee has not established that he is actually innocent of the crimes of which he was convicted.

Having failed to establish cause for the procedural default of his severance and insufficiency of evidence claims and prejudice resulting therefrom, or that a fundamental miscarriage will result should the Court fail to consider these claims, they are procedurally barred from habeas review.

**Standard of Review**

As with all habeas petitions brought after the effective date of AEDPA, a federal court cannot grant habeas relief in a case in which there was an adjudication on the merits in a state court proceeding unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362

(2000).[6]

## Merits of the Petition

## I.   Ineffective assistance of appellate counsel

### A.   Applicable legal standard

In order to prevail on a claim of ineffective assistance of counsel within the framework

established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas

petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell

below an objective standard of reasonableness," *id.* at 688, and second, he must show that there

is a "reasonable probability" that but for counsel's error, the outcome would have been different,

*id.* at 694. The issue of prejudice need not be addressed, however, if a petitioner is unable to

demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court

deciding an ineffective assistance claim to . . . address both components of the inquiry if the

defendant makes an insufficient showing on one." *Id.* at 697.

Although the *Strickland* test was formulated in the context of evaluating the effectiveness

of trial counsel, the same standard applies to claims regarding the performance of appellate

counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing, *e.g.*, *Claudio v. Scully*, 982

---

[6]   The Appellate Division tersely rejected the ineffective assistance of appellate counsel claims in Lee's application for a writ of error *coram nobis* in one word–"denied." *See People v. Lee*, Nos. 750/01, 00-00093, slip op. 05088, *supra*. The Second Circuit has held that a one-word denial of a petitioner's claim constitutes an "adjudication on the merits" for purposes of AEDPA. *See Sellan v. Kuhlman*, 261 F.3d 303, 312-13 (2d Cir. 2001). Where, as here, the state court failed to articulate a coherent rationale for its rejection of a petitioner's claim, but that rejection nevertheless was clearly on the merits, the federal court must "'focus its review on whether the state court's ultimate decision was an "unreasonable application" of clearly established Supreme Court precedent.'" *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001) (quoting *Sellan*, 261 F.3d at 311-12) (in turn quoting *Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000), *cert. denied sub nom.*, *Bell v. Beck*, 534 U.S. 830 (2001)). Thus far, the Supreme Court has offered little guidance as to the meaning of the term "unreasonable application"; its instruction to the federal courts to ask whether the state court's application of federal law was objectively unreasonable, *Williams v. Taylor*, 529 U.S. at 409, is, as the Second Circuit has observed, somewhat tautological. *See Aparicio*, 269 F.3d at 94.

F.2d 798, 803 (2d Cir. 1992)). Appellate counsel need not present every non-frivolous argument

that could be made on petitioner's behalf.  *Mayo*, 13 F.3d at 533; *see also Evitts v. Lucey*, 469

U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every argument,

regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ

hindsight to second-guess an appellate attorney's choices concerning strategy.  *Mayo*, 13 F.3d at

533; *see also Jones v. Barnes*, 463 U.S. 745, 754 (1984) ("For judges to second-guess reasonable

professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim

suggested by a client would disserve the [ ] goal of vigorous and effective advocacy[.]").

Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant.

*See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must

demonstrate that 'there was a "reasonable probability" that [his] claim would have been

successful . . . .'") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803)).

However, a habeas petitioner may establish constitutionally inadequate performance if he shows

that his appellate counsel omitted material and obvious issues while pursuing arguments that

were patently and significantly weaker. *Mayo*, 13 F.3d at 533.

      **B.**     **Alleged grounds of attorney ineffectiveness**

           **1.**     **Failure to properly argue denial of severance**

      According to Lee, appellate counsel was deficient in failing to advance a compelling

argument that the trial court erred in denying Lee's severance motion. On direct appeal, counsel

stressed that Walker's defense concerning the attempted robbery conflicted with Lee's defense

that he merely was an innocent bystander:  Walker testified that he entered Henner's Liquor Store

by himself and never spoke to Lee. Appellate counsel argued that Lee, on the other hand, could

have relied upon on the testimony that he and Walker were seen talking to each other in order to

argue that they simply were exchanging innocuous greetings as they walked into the store.

Appellate counsel also contended that Walker's contrary testimony undercut Lee's defense in

that respect. Counsel also urged that Lee was prejudiced by evidence of Walker's having been

found with the gun stolen from Wadi's Deli.

       "Severance is compelled where the core of each defense is in irreconcilable conflict with

the other and where there is a significant danger, as both defenses are portrayed to the trial court,

that the conflict alone would lead the jury to infer defendant's guilt." *People v. Mahboubian*, 74

N.Y.2d 174, 184 (1989).  Under both State and Federal law, decisions to sever "are committed to

the broad discretion of the trial court." *Espinal v. Kelly*, 1998 WL 655551, at *1 (S.D.N.Y. Sept.

24, 1998) (citing *United Stated States v. Alvarado*, 882 F.2d 645, 655 (2d Cir. 1989), *cert.*

*denied*, 493 U.S. 1071 (1990)) (quotation omitted); *People v. Mahboubian*, 74 N.Y.2d at 183.

"Joinder of offenses rises to the level of a constitutional violation only if it actually render[s]

petitioner's state trial fundamentally unfair and hence, violative of due process." *Herring v.*

*Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841

(5th Cir. 1976), *cert. denied*, 430 U.S. 910 (1977)).

       Looking at the bare facts of this case, I do not find that it presents a scenario where a

severance motion was likely to have been successful. First of all, this case did not present a

Confrontation Clause problem; there was no confession by co-defendant Walker implicating Lee,

and, in any event, Walker testified at trial, thereby making him available for cross-examination.

Secondly, the defendants' respective defenses were not irreconcilable. The core of Walker's

defense regarding the attempted robbery of Henner's Liquor Store was that he acted alone, and

that Lee had no involvement beyond merely being present as a witness. Walker's testimony that he did not walk into the liquor store with Lee or talk to him did not create an inference of guilt since, as defense counsel argued on summation, the eyewitnesses were unable to recall this information specifically: Two of the eyewitnesses said that Lee and Walker were conversing, but one stated that Walker entered first, followed by Lee. None of the witnesses overheard their alleged conversation. With respect to the robbery and assault charges at Wadi's Deli, Walker denied that he ever went into Wadi's Deli on the night of the incident; Lee shared the same defense of misidentification.

Indeed, after reviewing Lee's appellate brief, I find that appellate counsel made the best argument he could under the circumstances. Crucially, Lee does not offer any additional arguments that counsel should have made regarding the denial of severance. Regardless of the artfulness of counsel's argument, severance was unlikely; Lee therefore was not prejudiced by any perceived flaws in his attorney's brief. *See Mayo v. Scully*, 13 F.3d at 534.[7]

## 2.    Failure to argue multiplicity of indictment

Lee faults appellate counsel for failing to argue on direct appeal that the fourth and fifth counts of the indictment (first degree assault); the sixth and seventh counts (fourth degree grand larceny); and the eighth and ninth counts (second degree attempted robbery) were "each examples of multiplicitous counts." Petitioner's Memorandum of Law ("Pet'r Mem.") at 10 (Docket #1). The Appellate Division summarily rejected this claim when Lee raised it in his

---

[7] Lee also faults counsel for failing to "Federalize" his severance claim. I find this argument to be unavailing. Although counsel only cited state court cases in his brief, the cases relied upon constitutional analyses, and motions to sever typically call to mind constitutional issues, *see Daye v. Attorney Gen'l of N.Y.*, 696 F.2d at 194. The state appellate court would have been alerted to the constitutional nature of Lee's severance claim. As discussed above, however, appellate counsel chose not to press this argument when seeking leave to appeal.

*coram nobis* application.

The doctrine of avoiding multiplicity when charging defendants is based upon the Double Jeopardy clause of the Fifth Amendment which protects persons against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); U.S. Const. amend. V.  When a defendant has violated two separate criminal statutes, Double Jeopardy becomes a concern if both sections prohibit the same offense or if one offense is a lesser included offense of the other. *Aparicio v. Artuz*, 269 F.3d 78, 96 (2d Cir. 2001) (citing *Rutledge v. United States*, 517 U.S. 292, 297 (1996)). The guideline for making this determination is "whether the legislature intended to authorize separate punishments for the offensive conduct under separate statutes." *Id.* (citing *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)). It is not dispositive that both offenses may have arisen out of a single criminal transaction. *Id.* Rather, the issue is "'whether the "offense"–in the legal sense, as defined by [the legislature]–complained of in one count is the same as that charged in another.'" *Id.* (quoting *Chacko*, 169 F.3d at 146) (other citations omitted)).

For over seventy years, the applicable test for determining whether two statutory sections proscribe the "same" offense has been that which was set forth in *Blockburger v. United States*, 284 U.S. 299 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. The language used in the test formulated by New York state courts tracks that found in *Blockburger*. Under New York law, "[a]n indictment is multiplicitous when 'two separate counts . . . charge the same crime.' Multiplicity does not exist, however, 'if each count requires proof of an

additional fact that the other does not.'" *People v. Demetsenare*, 243 A.D.2d 777, 779-80 (App.

Div. 3d Dept. 1997) (internal citations omitted) (emphasis added) (quoting *People v. Kindlon*,

217 A.D.2d 793, 794-95 (App. Div. 3d Dept. 1995)).

      In Lee's indictment, the fourth count alleged first degree assault under N.Y. Penal Law §

120.10(1) (assault with a deadly weapon), while the fifth count of the indictment alleged first

degree assault under § 120.10(4) (assault during a felony). These counts do not appear to present

a multiplicity issue because in order to prove first degree assault under N.Y. Penal Law

§120.10(1), the prosecution must show that the defendant caused "serious physical injury . . . by

means of a deadly weapon or dangerous instrument[.]" N.Y. Penal Law § 120.10(1). On the other

hand, to obtain a conviction under § 120.10(4), assault during a felony, the prosecution must

prove that in the course of committing a felony, or during immediate flight from the scene of the

felony, the defendant "cause[d] serious physical injury" to a victim. Under § 120.10(4), the injury

need not have been caused by a weapon. Since each offense charged requires proof of a fact

which the other does not, the counts do not appear to be multiplicitous under New York law.[8]  In

---

    [8]  *See, e.g., People v. Lebron*, 305 A.D.2d 799, 759 N.Y.S.2d 575, 577 (App. Div. 3d Dept. 2003). In that case, the New York Court of Appeals rejected defendant's argument that his convictions for murder in the first degree in violation of Penal Law § 125.27(1)(a)(vii) and murder in the first degree in violation of Penal Law § 125.27(1)(a) (viii) were multiplicitous and violative of the Fifth Amendment's prohibition against Double Jeopardy. As the court noted, the statutory provisions in question defined different ways in which murder can be committed: Under § 125.27(1)(a)(vii), a person is guilty of murder when, with intent to cause the death of another, he or she does so in the course of the attempted commission of a robbery, while under § 125.27(1)(a)(viii), a person is guilty of murder when, with intent to cause the death of another, he or she does so and, as part of the same criminal transaction, with the intent to cause the death of an additional person, he or she causes the death of such additional person. *See* N.Y. Penal Law §§ 125.27(1)(a)(vii); 125.27(1)(a)(viii). The court found that since the legislature provided different ways in which murder in the first degree could occur, each of the cited subsections constituted a separate and distinct offense. *Lebron*, 759 N.Y.S.2d at 577. Therefore, the court concluded, the counts of the indictment charging defendant with murder under two different subsections of the Penal Law constituted "noninclusory counts," because neither count contained all of the elements of the other.  Thus, conviction on each was permissible." *Id.; compare Lebron, supra, with People v. Senisi*, 196 A.D.2d 376, 382, 610 N.Y.S.2d 542, 546 (App. Div. 2d Dept. 1994) (where two counts of indictment were premised on *same subdivision* of same statute (N.Y. Penal Law § 125.15(1)) and, insofar as they applied to defendant, differed only in that they were each supported by different specification of recklessness, court found that counts were multiplicitous). *See also Newsome*

any event, even if there was a multiplicity issue, it was remedied by the trial court's imposition of

concurrent sentences on these two counts. *See United States v. Reed*, 639 F.2d 896, 904 n.6 (2d

Cir. 1981) ("The principal danger in multiplicity that the defendant will be given multiple

sentences for the same offense can be remedied at any time by merging the convictions and

permitting only a single sentence.") (citing 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE §

145, at 336 (1969)).

Turning to the sixth and seventh counts alleging fourth degree grand larceny under N.Y.

Penal Law § 155.30(5) (unlawful stealing of property from another person) and § 155.30(7)

(unlawful stealing of a firearm), I find that there may be a multiplicity issue because the only

item of property actually stolen during the robbery was a firearm–*i.e.*, the victim's shotgun. Even

if these two counts were multiplicitous, no Double Jeopardy prejudice ensued because Lee

received concurrent sentences on both of these charges. *See Reed*, 639 F.2d at 904 n.6.

Finally, the eighth and ninth counts of the indictment respectively alleged the commission

of attempted robbery in the second degree under both N.Y. Penal Law § 160.10(1) (robbery

attempted with aid of a person actually present) and N.Y. Penal Law § 160.10(2)(b) (robbery

attempted during the course of a felony while displaying what appears to be a gun). These two

counts do not appear to present a multiplicity problem since each requires proof of a fact which

the other does not. Attempted robbery under § 160.10(2)(b) calls for proof that the defendant

---

*v. Fischer*, No. 04-Civ.-1409(RMB)(DFE), 2005 WL 911434, at *3 (S.D.N.Y. Apr. 18, 2005) (petitioner argued that two counts of indictment were multiplicitous because "each pertained to the display of a firearm and contained identical language tracking" New York Penal Law § 160.15(3) (first degree robbery where defendant "[u]ses or threatens the immediate use of a dangerous instrument") and § 160.15(4) (first degree robbery where defendant "[d]isplays what appears to be a pistol, revolver rifle, shotgun, machine gun or other firearm"); court held that counts were not multiplicitous because the counts required proof of "two separate firearms").

displayed what appeared to be firearm; such a requirement is not present in § 160.10(1). Thus, it was not improper for Lee to be indicted and convicted for these two offenses because they did not constitute the "same offense" under *Blockburger*; neither count contained all of the elements of the other. Moreover, there was no Double Jeopardy prejudice since Lee was sentenced to concurrent terms of imprisonment on counts eight and nine.

Lee's ineffective assistance claim based upon the issue of multiplicitous charges falters because he is unable to show that he was prejudiced by appellate counsel's omission of the argument on appeal. Even if appellate counsel had raised the multiplicity claims urged by Lee here, the challenge would likely have proven fruitless. First of all, the appellate division would not have found the indictment multiplicitous as a matter of state law. *See* N.Y. Crim. Proc. Law § 200.30(2) ("[A] statutory provision which defines the offense . . . by providing, in different subdivision or paragraphs, different ways in which such named offense may be committed, defines a separate offense in each such subdivision or paragraph."). Second, even if the state court had found multiplicity in the indictment, the remedy would have been to merge any unlawfully imposed consecutive sentences and make them run concurrently.  However, as the consecutive sentences Lee received were not improper, he was not punished in violation of the Double Jeopardy clause.

### 3.     Failure to argue that the robbery evidence was insufficient

Lee contends that appellate counsel was ineffective for failing to argue that the evidence of Lee's culpability for the robbery of Wadi's Deli was insufficient to support the conviction. On direct appeal, appellate counsel did raise the comparatively stronger argument that the proof of Lee's involvement in the attempted robbery of the liquor store was not sufficient to establish

guilt beyond a reasonable doubt. That claim was denied, however.

Had appellate counsel argued that the evidence was insufficient to support the robbery conviction regarding the incident at Wadi's Deli, the state court would have examined the claim through an extremely exacting lens. Viewing the evidence in a light most favorable to the prosecution and according it the benefit of every favorable inference, a reviewing court must ask whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Marmulstein*, 6 A.D.3d 879, 775 N.Y.S.2d 405, 407 (4th Dept. 2004) (*citing People v. Bleakley*, 69 N.Y.2d 490, 495 (1987); *People v. Contes*, 60 N.Y.2d 620, 621 (1983)). Resolution of issues of witness credibility, as well as the weight to be accorded the evidence presented, are primarily questions to be determined by the jury, which saw and heard the witnesses. *E.g.*, *People v. Lopez*, 307 A.D.2d 327, 762 N.Y.S.2d 515, 516 (2d Dept. 2003) (citing *People v. Gaimari*, 176 N.Y. 84, 94, 68 N.E. 112 (1903)).

According to Lee, the prosecution failed to prove motive, presence at the crime scene, and flight therefrom, "each of which are necessary elements to establish, via circumstance, that a crime was committed by any particular defendant." Pet'r Mem. at 11 (Docket #1). Lee criticizes the victim's identification of him at the show-up as "sketchy at best." He also points out that the victim was unable to identify the perpetrators in court. Thus, Lee contends, there was no direct evidence of his involvement.

Contrary to Lee's contention, there was direct evidence of his involvement in the robbery of Wadi's Deli. The victim testified at trial that, about one hour after the crime, he identified Lee as one of the individuals who beat him and stole his shotgun. Although the victim was unable to identify Lee in court, the police officer who conducted the identification procedure testified at

trial that the victim unequivocally identified Lee at the show-up.

In light of the deference which a reviewing court owes to a jury's findings of fact and determinations of witness credibility, it is highly unlikely that an insufficient evidence claim would have succeeded on direct appeal. For that reason, Lee is unable to establish that he was prejudiced by appellate counsel's omission of such an argument on appeal.[9]

### 4. Failure to argue that trial counsel was ineffective for not requesting a circumstantial evidence charge

Lee contends that "most damaging of trial counsel's errors" was his failure to request a jury instruction regarding circumstantial evidence. Pet'r Mem. at 13 (Docket #1). According to Lee, appellate counsel was remiss in failing to argue that trial counsel was ineffective on this basis.

Whenever the prosecution relies entirely on circumstantial evidence to establish all elements of the charge against defendant, the court should instruct the jury, in substance, "that the evidence must establish guilt to a moral certainty." *People v. Daddona*, 81 N.Y.2d 990, 992, 599 N.Y.S.2d 530 (N.Y. 1993) (citations omitted). Where, however, a charge is supported with

---

[9] Lee's procedurally defaulted, independent claim that the evidence was insufficient to support the robbery and assault convictions similarly is without merit under Federal law.  On habeas review, a court is not permitted to "'make its own subjective determination of guilt or innocence.'" *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402 (1993)). A conviction will be found to be supported by sufficient evidence if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Accordingly, a habeas petitioner bears a "heavy burden" in challenging the sufficiency of the evidence supporting his conviction. *Id.*

Here, the jury chose to credit the prosecution witnesses' testimony and convict Lee despite the victim's failure to make an in-court identification of Lee. The jury is exclusively responsible for determining the credibility of a witness, and a habeas court may not revisit the fact-finder's credibility determinations. *Marshall v. Lonberger*, 459 U.S. 422, 432-35 (1983); *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993).  A reviewing court may not "'reassess the fact specific credibility judgments by juries or . . . weigh conflicting testimony.'" *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (quoting *Anderson v. Senkowski*, 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992)). Thus, were I permitted to review Lee's independent claim based on the insufficiency of the evidence, I would conclude that it does not warrant habeas relief.

both circumstantial and direct evidence, the court need not issue a circumstantial evidence charge to the jury. *Id.* (citations omitted); *see also People v. Sampson*, 289 A.D.2d 1022, 1023, 735 N.Y.S.2d 283 (App. Div. 4th Dept. 2001) ("Nor did the court err in denying defendant's request for a circumstantial evidence charge where, as here, the evidence was both direct and circumstantial[.]") (citations omitted); *People v. Cruz*, 272 A.D.2d 922, 923, 709 N.Y.S.2d 717 (App. Div. 4th Dept. 2000) (court did not err in refusing to charge the jury on moral certainty; that charge is not required where there is both direct and circumstantial evidence of guilt).

Here, direct evidence of his culpability for the robbery of Wadi's Deli was presented at trial–namely, the testimony of Officer DiVincenzo who observed the decisive identification of Lee by the victim about an hour after the incident. *See* T.467. Had trial counsel requested a circumstantial evidence charge, it in all likelihood would have been denied by the trial court. Thus, Lee was not prejudiced by counsel's failure to ask for such a charge. Similarly, because the court on direct appeal would have rejected an ineffective assistance of counsel claim premised on the failure to requested an unwarranted jury instruction, Lee was not prejudiced by appellate counsel's omission of such a claim.

### 5. Failure to argue that trial counsel was ineffective for failing to request that the court charge lesser included offenses

Lee faults trial counsel for "effectually [*sic*] waiving defendant's right to seek the submission of any lesser included counts." Pet'r Mem. at 14 (Docket #1). While Lee does not specify which lesser included offenses should have been charged, he argues that appellate counsel's failure to argue this claim resulted in prejudice to him.

Under N.Y. Crim. Proc. Law § 300.50(1), the trial court "may submit in the alternative any lesser included offense *if there is a reasonable view of the evidence* which would support a

finding that the defendant committed such lesser offense but did not commit the greater. . . ."

N.Y. Crim. Proc. Law § 300.50(1) (emphasis supplied). Having reviewed the applicable sections

of the Penal Law, I find that no reasonable view of the evidence supports a finding that Lee

committed any lesser included offenses of the counts charged in the indictment. For instance, a

factfinder could not reasonably view the evidence concerning the incident at Wadi's Deli and

find that Lee was guilty of second degree assault under N.Y. Penal Law § 120.05 (intentionally

causing "serious physical injury;" recklessly causing "serious physical injury" with a deadly

weapon or dangerous instrument; or causing "physical injury" during a felony or attempted

felony); or third degree assault under § 120.00 (intentionally causing "physical injury"; recklessly

causing "physical injury;" or negligently causing "physical injury" with a  deadly weapon or

dangerous instrument), but not first degree assault under § 120.10(1) (intentionally causing

"serious physical injury" with a deadly weapon or dangerous instrument).

 The proof at trial was that Lee and Walker beat the victim with their hands, kicked him,

and hit him with a stick, a dangerous instrument and potentially deadly weapon, causing the

victim to suffer a broken arm and great pain. Even if it was Walker who wielded the stick during

the attack, the jury still was entitled to find Lee guilty of first degree assault with a deadly

weapon or dangerous instrument under an accomplice theory of liability since he "intentionally

aid[ed]" Walker in the attack by holding the victim down on the floor, *see* N.Y. Penal Law §

20.00. As a request to charge lesser included offenses in all likelihood would have been denied,

Lee was not prejudiced by trial counsel's failure to make such a demand. Since the state court on

appeal would not have found trial counsel ineffective on this basis, appellate counsel's failure to

argue this claim did not result in prejudice to the petitioner.

C.      **Overall assessment of counsel's performance**

As discussed above, Lee has failed to show that but for counsel's omissions, there is a reasonable probability that the outcome of his direct appeal would have been a reversal of his conviction. Moreover, appellate counsel's brief raised a number of salient, competently argued issues; the arguments omitted were not particularly strong or likely to have succeeded. Thus, the state court's denial of Lee's request for *coram nobis* relief on the ground that he was deprived of the effective assistance of appellate counsel was not an "unreasonable application of" the *Strickland* standard.

**CONCLUSION**

For the reasons stated above, Joseph Lee's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Lee has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      September 8, 2005
            Rochester, New York.